UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

KRISTOPHER TUCKER,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　　　)　　Case No.: 2:18-cv-02255-GMN-VCF
　　vs.　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　)　　**ORDER**
UNITED STATES OF AMERICA, *ex rel* U.S. )
Department of Veterans Affairs,　　　　 )
　　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendant.　　　　　　　 )

Pending before the Court is the United States of America's ("the Government's"), Motion to Bifurcate Trial, (ECF No. 21). Plaintiff Kristopher Tucker ("Plaintiff") filed a Response, (ECF No. 23), and the Government filed a Reply, (ECF No. 24).[1] Also pending before the Court are the Motions for Summary Judgment, (ECF Nos. 26, 27), filed by the Government and Plaintiff. Both parties filed Responses, (ECF Nos. 29, 30), and Replies, (ECF Nos. 31, 32), to their respective Motions.

For the reasons discussed below, the Court **GRANTS** the Government's Motion to Bifurcate Trial, **GRANTS in part** and **DENIES in part** the Government's Motion for Summary Judgment, and **DENIES** Plaintiff's Motion for Summary Judgment.

**I.　　BACKGROUND**

This case arises out of a collision on December 21, 2016, at 7:00 a.m., between Plaintiff and Dale Wayne Owens ("Owens") near the Southern Nevada Veterans Affairs Medical Center ("VA Hospital"). Plaintiff had been driving his motorcycle to work at Nellis Air Force Base,

---

[1] Also pending before the Court is the Government's Motion for Leave to File Supplement in Support of Bifurcation, (ECF No. 25). Plaintiff did not file an opposition or response, and the deadline to do so has passed. The Court accordingly grants the Government's Motion for Leave to File Supplement. *See* D. Nev. Local R. 7-2(d) ("The failure of an opposing party to file points and authorities in response to any motion, except a motion under Fed. R. Civ. P. 56 or a motion for attorney's fees, constitutes a consent to the granting of the motion.").

and Owens was driving a vehicle for the VA Hospital's Disabled Veterans Transportation Network as a volunteer. (Dep. Dale Owens at 21, Ex A to Gov.'s Mot. Summ J. ("MSJ"), ECF No. 27-2). The collision occurred when Owens made a left-hand turn to leave the VA Hospital as Plaintiff drove northbound on Pecos Road. (*Id.* at 31).

On October 2, 2017, Plaintiff submitted an administrative claim to the National Tort Center for the United States to recover compensation for his injuries from the collision. (Compl. ¶ 2, ECF No. 1). Because the U.S. Department of Veterans Affairs had not fully evaluated Plaintiff's claim within six months of receiving it, Plaintiff filed this action with the Court on November 26, 2018, asserting one claim of negligence under the Federal Tort Claims Act. (*Id.* ¶¶ 19–24). Plaintiff asserts that Owens failed to exercise due care when attempting to make a left turn while leaving the VA Hospital, causing Plaintiff to collide with the side of Owens's vehicle. (*Id.*). Plaintiff named the Government as the defendant since it was the entity who owned, controlled, and maintained the vehicle driven by Owens acting in the scope of his employment as a volunteer for the Department of Veterans Affairs during the incident. (*Id.*); *see* 28 U.S.C. § 1346(b).

As litigation proceeded, the parties stipulated to bifurcate deadlines for liability and damages. (Order Granting Stip. Am. Scheduling Order, ECF No. 20). The parties also agreed to defer medical expert discovery "until after liability has been adjudicated." (*Id.*). The Government thereafter filed the pending Motion to Bifurcate Trial, (ECF No. 21), and both parties moved for summary judgment in their favor.

## II.     LEGAL STANDARD

### A. Bifurcation of Trial

Federal Rule of Civil Procedure 42(b) permits bifurcation of trial "for convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). Courts accordingly may order a separate trial of one or more issues, claims, crossclaims, counterclaims, or third-party

claims. *Id.* For example, "[i]t is clear that Rule 42(b) gives courts the authority to separate trials into liability and damage phases." *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 601 (9th Cir. 2016) (quoting *De Anda v. City of Long Beach*, 7 F.3d 1418, 1421 (9th Cir. 1993)). The decision to bifurcate is within the court's discretion. *Hirst v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982).

### B. Summary Judgment

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went

uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations

that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. However, if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.  DISCUSSION

The Government moves to bifurcate this trial into two parts: (1) liability; and (2) damages. Moreover, on the issue of liability, both parties filed motions for summary judgment with Plaintiff's single claim of negligence. The Court's below discussion begins with the appropriateness of bifurcating trial pursuant to Federal Rule of Civil Procedure ("FRCP") 42(b), then addresses summary judgment.

### A.  Bifurcation of Trial

The Government argues that bifurcating trial into phases of liability and damages will promote convenience, conservation of judicial resources, and preservation of costs by the parties. (Mot. Bifurcate 3:18–20). To support its argument, the Government asserts that trial on liability will likely take one day and require only a few witnesses alongside video evidence, which would not involve significant costs. (*Id.* 4:12–14). Establishing damages, however, could stretch to around ten days and will require significant funding by both sides to retain various experts—such as a neurologist, orthopedic specialist, life care planner, and economist—warranting expenses likely over $100,000.00. (*Id.* 3:20–4:21). Plaintiff responds that bifurcation is not appropriate because the issues here of liability and damages are "so

interwoven that they cannot be submitted . . . independently." (Resp. 4:18–20, ECF No. 23).

After considering the guiding factors for bifurcation under FRCP 42(b), the Court grants the Government's request to bifurcate trial into two phases—liability and damages. Central to this decision is that a finding of liability against Plaintiff could resolve the entire case without any need to address damages. *Cook v. United Serv. Auto. Ass'n.*, 169 F.R.D. 359, 361 (D. Nev. 1996) (explaining that bifurcation is particularly appropriate "when resolution of a single claim or issue could be dispositive of the entire case" (citing 9 Wright & Miller, Federal Practice and Procedure: Civil 2d, § 2388, p. 476 (1994))). Bifurcation could therefore save the parties significant funds in retaining experts on damages and medical treatment, while creating the potential for resolution through a single day trial. Also, because most of the evidence on damages does not appear essential to establishing what happened before and during the collision, it is unlikely that there will be duplicative presentation of evidence if bifurcation occurred.

Regarding Plaintiff's argument about the interwoven nature of liability and damages, Plaintiff's main concern is that credibility of witnesses is fundamental to proving how the collision occurred. (Resp. 4:27–5:1). Consequently, according to Plaintiff, bifurcation will prevent him from presenting medical evidence at the liability stage to show how his injuries render him incapable of remembering the collision and presenting his side of the story. (*Id.*) (anticipating that the Government will attempt to undermine Plaintiff's credibility by pointing to how he cannot remember the collision). But Plaintiff's credibility argument is unavailing. Bifurcation will not prevent Plaintiff from presenting *any* evidence about his injuries and corresponding memory loss. Indeed, the Government concedes that Plaintiff has no memory of the collision because of his traumatic brain injuries. (Mot. Bifurcate 2:8–9). The parties can stipulate to that fact for trial on liability, or Plaintiff can present an appropriate amount of evidence on diminished memory relative to the issues raised and as allowed under the Federal

Rules of Evidence. Thus, contrary to Plaintiff's argument, the Court does not find that bifurcation will result in "great harm" by preventing him from bolstering his credibility if attacked by the Government. *Cf. Nnodimele v. Derienzo*, No. 13-cv-3461-ARR-RLM, 2016 WL 3561708, at *2 (E.D.N.Y. June 27, 2016) (discussing how bifurcation would not prohibit the introduction of all evidence on character and credibility during the liability stage of trial, if that is an issue). Even more, bifurcation ensures that Plaintiff's injuries do not inadvertently become a guiding consideration with liability, and evidence on the extent of his injuries is not essential to proving liability with his negligence claim.

Last, Plaintiff contends that bifurcation will result in unnecessary anxiety and difficulty because it requires Plaintiff to travel from Alabama to Las Vegas on multiple occasions. Travel would also reduce Plaintiff's ability to work "odd jobs" near his home, which are central to his income. (*Id.* 5:7–20). These concerns do not persuade the Court against bifurcation. Plaintiff has not provided proof on the frequency in which he secures "odd jobs," nor is there support on the average duration of such jobs. As a result, it is too speculative for the Court to now presume that bifurcating trial will substantially interfere with Plaintiff's employment. Further, while the Court is sympathetic to Plaintiff's anxiety and difficulties when traveling, that does not serve as a sufficient basis to reject an effective, efficient disposition of issues in this case. In fact, disposition of liability in one day could render the damages portion of trial moot, thereby saving several days that Plaintiff would need to spend away from home.

Accordingly, the Court in exercising its discretion will bifurcate trial for this matter into two stages: liability, then damages. Bifurcation avoids potentially unnecessary costs while effectively and efficiently resolving factual and legal issues.

**B. Summary Judgment**

Plaintiff brings his negligence claim pursuant to the Federal Torts Claim Act, 28 U.S.C. §§ 2671 and 1346(b). (*See generally* Compl., ECF No. 1). Nevada law governs the claim's

merits since the collision occurred in Nevada. *McMurray v. United States*, 918 F.2d 834, 836 (9th Cir. 1990) ("Under the Federal Torts Claim Act, suits against the United States are governed by the substantive law of the place where the act or omission complained of occurs."). To succeed, Plaintiff must prove four elements: (1) that the defendant had a duty to exercise due care with respect to the plaintiff; (2) that the defendant breached this duty; (3) that the breach caused the plaintiff's injury; and (4) that the plaintiff was damaged. *Joynt v. California Hotel & Casino*, 835 P.2d 799, 801 (Nev. 1992).

Both parties move for summary judgment on liability by arguing that the other breached duties of care in operating their vehicles, thereby causing the collision. (Pl.'s MSJ 3:9–11, 8:21–16:7) ("Mr. Owens was negligent as a matter of law and his negligence caused this collision."); (Gov.'s MSJ 1:24–25, 12:6–17:16) ("The undisputed material facts show Plaintiff was negligent and that his negligence proximately caused the accident."). As explained below, genuine disputes of material facts exist for resolution at trial, which preclude summary judgment.

### 1) *Duty of Care and Breach*

Plaintiff contends that Owens, acting as a volunteer driver for the Government, breached several duties of care imposed by statute and common law when turning left into the intersection where the collision occurred: maintain a proper lookout to avoid an accident, yield the right-of-way when making a left turn to an approaching vehicle which is so close as to constitute an "immediate hazard," and yield the right-of-way before crossing a highway to "all approaching vehicles on such highway." Nev. Rev. Stat. 484B.260; Nev. Rev. Stat. 484B.253; *Gordon v. Hurtado*, 609 P.2d 327, 329 (Nev. 1980); (Pl.'s MSJ 8:21–25, 10:3–24). The Government similarly points to several duties imposed by statute and common law that Plaintiff purportedly breached while operating his motorcycle as he approached the intersection: not to drive at a speed greater than is reasonable under the circumstances or greater than that posted

by a public authority, exercise due care and reduce speed to avoid a collision with a vehicle when approaching an intersection, and do not drive in willful or wanton disregard for the safety of others on a highway with public access. Nev. Rev. Stat. 484B.600; Nev. Rev. Stat. 484B.603(1); Nev. Rev. Stat. 484B.653(1)(a); Nev. Rev. Stat. 484B.253; (Gov.'s MSJ 12:18–13:20). The below discussion addresses in turn the duties of care owed by each party and whether summary judgment is appropriate as to a breach of those duties.

### a. *Duty of Care and Breach as to the Government*

Plaintiff supports his request for summary judgment by pointing to testimony from Owens stating that Owens saw Plaintiff on his motorcycle before the collision. (Pl.'s MSJ 4:1–22, 9:1–17). Plaintiff also points to witness deposition testimony questioning why Owens made the left-hand turn in front of Plaintiff. (Dep. Thomas B. Jensen at 27–28, Ex. 5 to Pl.'s MSJ, ECF No. 26). From that, Plaintiff argues that Owens failed to "take[] a minute to wait and fully appreciate what was in plain sight," breaching applicable duties of care. (Pl.'s MSJ 9:1–21).

Contrary to Plaintiff's position, the evidence here does not irrefutably reveal that Owens violated duties of care before the collision. Owens's testimony, as well as an expert report provided by the Government, offers some support that Owens took all necessary precautions—that he stopped before making his turn, looked both ways before entering the intersection, identified oncoming traffic and his ability to safely enter the intersection, and continued to look both ways as he entered the intersection before realizing that Plaintiff arrived sooner than expected. (Dep. Dale Owens at 31:2–32:4, 34:6–49:25, Ex. A. to Gov.'s MSJ, ECF No. 27-2); (Initial Expert Report of John Cunag at 13–14, Ex. L to Gov.'s MSJ, ECF No. 27-15). That said, some evidence supports a reasonable inference that Owens did not exercise due caution before entering the intersection. (Dep. Thomas Jenson, Ex. H to Gov.'s MSJ) (testifying that, based on Mr. Jenson's view of the collision, he wondered whether Owens incorrectly assumed that Plaintiff was going to "pull into the entrance" rather than proceed forward); (*see* Rebuttal

Expert Report of William Redfairn, Ex. M to Def's MSJ, ECF No. 27-16). This divergence in evidence creates genuine disputes of material fact as to whether Owens breached applicable duties of care before the collision, which are appropriate for resolution at trial rather than summary judgment.

Plaintiff nevertheless argues it is undisputed that Owens observed Plaintiff approaching the intersection, and nothing contradicts how Owens entered the Pecos Road traffic lanes directly in front of Plaintiff's path. (Pl.'s MSJ 15:20–27). Even so, the focus with Plaintiff's negligence claim is on whether Owens acted reasonably when yielding before entering the intersection, not strict liability based on a crash and injuries occurring. *Cf. Johnson v. Brown*, 359 P.2d 80, 82 (Nev. 1961) ("An inference of negligence cannot be drawn from the bare fact that an injury has occurred.").

Accordingly, because the parties' evidence at this stage presents conflicting accounts of Owens's actions before entering the intersection, a dispute of material fact exists for trial as to whether Owens breached duties of care required by statute and common law. The Court therefore denies Plaintiff's Motion for Summary Judgment as to duty of care and breach.

### b.  *Duty of Care and Breach as to Plaintiff*

Turning now to the Government's Motion for Summary Judgment regarding Plaintiff's duties of care, Plaintiff concedes he was speeding in violation of NRS 404.600(b) and did not reduce his speed as he approached the intersection prior to the collision as required by NRS 484B.603(1). (Resp. 10:19–11:11, ECF No. 30) ("Plaintiff agrees. He was travelling in excess of the posted speed limit at the time of the subject collision . . . . As Defendant states, there is no evidence that Mr. Tucker made any attempt to slow down prior to impacting Mr. Owens' [sic] vehicle."). Plaintiff's concessions thus make summary judgment appropriate in favor of the Government on breach by Plaintiff as to these statutorily required duties of care.

Plaintiff does, however, refute that he violated NRS 484B.253 by failing to yield to a

vehicle properly making a left-hand turn. (Resp. 11:19–22). This statute requires that drivers approaching an intersection yield to another car making a left-hand turn when that turning driver has already "so yielded and having given a signal when and as required." *See* Nev. Rev. Stat. 484B.253. As explained in the previous section of this Order, evidence before the Court creates a genuine dispute of material fact as to whether Owens acted with all due care before entering the intersection to make his left-hand turn. The Court, consequently, denies summary judgment as to Plaintiff breaching a duty of care imposed by NRS 484B.253.

Though the Court grants summary judgment in part as to duty and breach against Plaintiff, that is not the end of the inquiry. Remaining at issue is whether these violations *caused* the collision, as discussed below.

**2) Causation**

Causation for purposes of a negligence claim refers to both "actual" and "proximate" cause. *See Joynt*, 835 P.2d at 801. For "actual" cause, a party must show that but for the other's wrongdoing the accident would not have occurred. *Terrell v. Cent. Washington Asphalt, Inc.*, No. 2:11-cv-00142-APG, 2015 WL 4419375, at *4 (D. Nev. July 20, 2015) (citing *Dow Chem. Co. v. Mahlum*, 970 P.2d 98, 107 (Nev. 1998), *overruled in part on other grounds by GES, Inc. v. Corbitt*, 21 P.3d 11, 15 (Nev. 2001)). "Proximate cause is 'any cause which in natural [foreseeable] and continuous sequence, unbroken by any efficient intervening cause, produces the injury complained of and without which the result would not have occurred.'" *Goodrich & Pennington v. J.R. Woolard*, 101 P.3d 792, 797 (Nev. 2004) (quoting *Taylor v. Silva*, 615 P.2d 970, 971 (Nev. 1980)). Moreover, "[w]hen a [party] violates a statute which was designed to protect a class of persons to which [another party] belongs, and thereby proximately causes injury to [that party], such a violation constitutes negligence per se, unless the [party] can show that the violation was excused." *See Barnes v. Delta Lines, Inc.*, 669 P.2d 709, 710 (Nev. 1983).

### *a. Causation as to Plaintiff*

The Government seeks summary judgment on causation by contending that Plaintiff's high rate of speed deprived Owens of time to avoid the collision as Owens "cautiously" entered the intersection. (Gov.'s MSJ 15:8–16). As support, the Government highlights witness testimony and expert reports detailing Plaintiff's violation of the posted speed limit, distance covered per second, and clarity of view with oncoming traffic. (*Id.* 14:25–16:9). The Government altogether argues that the "only supportable conclusion" is that Plaintiff's excessive speed "proximately caused this accident." (*Id.* 16:8–9).

In contrast to the Government's position, evidence of Plaintiff's speed does not establish that Plaintiff was, in fact, the actual and proximate cause of the collision. Instead, determining causation here requires weighing all the presented evidence—especially Owens's actions before entering the intersection and stopping in the middle after realizing imminent oncoming traffic. And the parties' presented evidence as to causation creates genuine disputes of material facts. Deposition testimony from eyewitnesses creates uncertainty about whether Owens correctly analyzed his timing and distance from oncoming traffic before entering the intersection. (Dep. Thomas Jenson, Ex. H to Gov.'s MSJ); (Dep. Princella Allen at 34–35, Ex. I to Gov.'s MSJ, ECF No. 27-12). Further, each party's expert draws differing conclusions about causation when considering Plaintiff's speed, distance covered, time to react, perception, and proper exercise of caution in combination with Owens's actions. (Initial Expert Report of William Redfairn, Ex. K to Gov.'s MSJ, ECF No. 27-14)[2]; (Initial Expert Report of John

---

[2] The Government contends that Mr. Redfairn's expert report centers on erroneous speed calculations and, thus, cannot create a genuine dispute of material fact. (Gov.'s MSJ 16:1–6). The Government supports that contention of erroneous calculations by citing to Mr. Redfairn's report placing Plaintiff's speed before the collision around 35 to 45 miles per hour, yet Mr. Redfairn's later deposition testimony stated Plaintiff's speed could have been around 55 to 60 miles per hour. (Dep. William Redfairn, Ex. K to Gov.'s MSJ). However, after reviewing Mr. Redfairn's testimony, the Court does not find that his report is so inconsistent and unreliable that it cannot be used to create a genuine dispute of material fact on summary judgment. The assessment of 55 to 60 miles per hour centered on Mr. Redfairn's speculation from video evidence, and he stated numerous times that his speculation was unreliable without further analysis. (*Id.* at 60–64) ("But I would not ever report that in a report to

Cunag, Ex. L to Gov.'s MSJ, ECF No. 27-15); (Rebuttal Expert Report of William Redfairn, Ex. M to Gov's MSJ, ECF No. 27-16).  Thus, a genuine dispute of material fact exists as to causation against Plaintiff, making summary judgment inappropriate. *See Terrell*, No. 2:11-CV-00142-APG, 2015 WL 4419375, at *5 ("[S]peeding does not proximately cause an accident if the speeding driver would have collided with the other person even if he had been driving within the speed limit.").

### b. *Causation as to the Government*

A dispute of material fact also exists as to whether Owens's actions, if constituting a breach of duty, were the proximate and actual cause of the collision.  Specifically, Owens's testimony offers support that, after taking precautionary measures before entering the intersection, he did not have time to avoid Plaintiff upon realizing "this guy is flying." (Dep. Dale Owens at 31–32, Ex. A to Gov.'s MSJ).  Nevertheless, testimony by eyewitnesses is inconclusive as to the occurrence and efficacy of Owens's precautionary measures, and the parties' experts reach different conclusions in their reports.  The Court therefore denies Plaintiff's Motion seeking summary judgment on causation against the Government. *See Terrell*, No. 2:11-cv-00142-APG, 2015 WL 4419375, at *5 ("[W]here the alleged breach is a failure to keep a proper lookout or to take appropriate evasive measures, the breach does not proximately cause a collision unless the driver could have seen the other vehicle in time to take effective precautionary measures to avoid the accident.").

Altogether, trial is appropriate to weigh the parties' evidence and make conclusions of

---

a client or anybody else without going back and saying I have this scientific evidence to back up what I saw in the video."); (*id.* at 132) (stating that Mr. Redfairn's report addresses how calculations of around 35 to 40 miles per hour were likely "low").  The differing assessments of speed merely create an issue for cross examination, not rejection at this pre-trial stage. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 978 F. Supp. 2d 1053, 1067 (C.D. Cal. 2013) (explaining how an expert's testimony must reliably relate to the facts of the case); *Humetrix, Inc. v. Gemplus, S.C.A.*, 268 F.3d 910, 919 (9th Cir. 2001) (explaining that a party who seeks to challenge the correctness of an expert's testimony should do so in cross-examination and with its own experts).

law and fact based on the evidence provided. *See* 28 U.S.C § 2402 (stating that any action against the United States under 28 U.S.C. § 1346 "shall be tried by the court without a jury, except that any action against the United States under section 1346(a)(1) shall, at the request of either party to such action, be tried by the court with a jury."); *cf. Taylor*, 615 P.2d at 971; *Lee v. GNLV Corp.*, 22 P.3d 209, 212 (Nev. 2001) ("[W]hen plaintiff as a matter of law cannot recover, defendant is entitled to a summary judgment." (quoting *Van Cleave v. Kietz–Mill Minit Mart*, 633 P.2d 1220, 1222 (Nev. 1981))); *Joynt*, 835 P.2d at 802.

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that the Government's Motion to Bifurcate Trial, (ECF No. 21), is **GRANTED**.

**IT IS FURTHER ORDERED** that the Government's Motion for Leave to File Supplement in Support of Bifurcation, (ECF No. 25), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 26), is **DENIED**.

**IT IS FURTHER ORDERED** that the Government's Motion for Summary Judgment, (ECF No. 27), is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that, within thirty days from the date of this Order, the parties shall jointly submit a proposed pretrial order and new scheduling order to govern the remaining aspects of this case. (*See* Order Granting Stip. to Am. Scheduling Order, ECF No. 20) ("Once dispositive motions have been decided by the Court on the issue of liability, if necessary, the parties will submit a new scheduling order to govern the disclosure of economic damages, experts and expert discovery.").

**DATED** this __26__ day of August, 2020.

_____
Gloria M. Navarro, District Judge
United States District Court